Our first case, which is United States v. Robert Decker. And Mr. Cohn. Thank you, Your Honor. With me at council table is Jackie Shapiro representing the appellant Robert Decker. The question presented by this case is whether a number of individual buy-sell drug transactions, which under well-settled law clearly would not be subject to prosecution for conspiracy to distribute drugs, or conspiracy to launder drug proceeds, make a seller like Decker subject to prosecution for these two conspiracy offenses simply because he sold the drugs on the dark web marketplace. That's the issue. I mean, that is basically the issue, but not quite because this is not a purely sufficiency argument, right? It's a Rule 11 issue. It's whether there was a factual basis for the judge to enter his guilty plea, his adjudication of guilt. And if the facts were not sufficient to establish conspiracies, the two conspiracies I just described, then the adjudication of guilt should not have been entered and the case should be remandered. What standard of review do you think we should employ? Well, there was no objection below, but we're dealing with a judge's adjudication of guilt. A judge has an independent duty to do that. So while ordinarily plain error would apply, no objection. Already the Tenth Circuit case that is in our briefs made a modified plain error analysis saying we're not going to apply Dominguez-Benitez. Would the defendant have pled guilty? And the reason ordinarily, of course, I might be fighting plain error and saying let's not apply plain error to this particular determination, but first of all, there's an opinion of this court authored by you, Judge Jordan, that says plain error applies. And second, as I thought about the case, I realized that the principles I just opened with in my first sentence here were well settled principles of law. That is to say that starting with money laundering, it's well settled that money laundering must involve the proceeds of a And the answer here was the transfer of bitcoins from the Web to Decker, which I understand to be the government's theory of where the money laundering is happening. Here are the proceeds. This was simply the conclusion of the drug transaction as evidenced by the fact that, again, as the government points out, the Web marketplace took a commission of the dollar amount before transferring the money to Decker. So what we have here is, in the words of Justice Scalia in the Santos opinion, confederates sharing the proceeds of their crime. But that's part of the I guess your position is based on the factual proffer, which is what we have, that there was nothing beyond that because obviously in certain cases you can launder proceeds of a certain type of unlawful activity, right? The fact that the proceeds come from a drug transaction doesn't mean that they're immune from a money laundering charge. In the right case, you can launder the proceeds of an unlawful activity. So your point is that there is nothing in or there was nothing in the factual proffer that explained how or why there was any laundering at all. And staying, yes, and staying with your observation on drug proceeds, as the PSI pointed out, this Web marketplace dealt not just in drugs but in drug paraphernalia, which I understand to be legal activity. Drug paraphernalia is not, could be pipes, could be legal activity, stolen goods, guns, and even if stolen goods and guns are illegal, typically in a conspiracy, one requires a meeting of the minds as to the unlawful purpose of the activity, of the agreement, of the conspiracy. So here there is no evidence in the factual proffer, and for that matter in the PSI, that this Web marketplace, as it was giving commissions, say, to Mr. Decker, thought that these were commissions for drug sales, for drug paraphernalia, for guns. There's no discussion. There's no identification of a meeting, of conversations, of anything like that. Which, by the way, if you read the case law, including, say, Puentes-Hurtado, there this court faced a similar issue. Was there enough evidence to support conspiracy? And what the court did, it said, well, let's look at the truck that the defendant was driving. It had $1.2 million in it. We know those trucks were taking kilos of cocaine to Mexico. We found a note in the truck saying, call Jido. I forget the name now. And Jido was identified as the head of the drug organization. This is fact finding. These are facts. These are facts that judges look at. And if I might raise the stakes a little bit for this case, because I think it is an important case, what is striking here is the government is trying to get a conviction without facts. Counsel, I note what you're saying, that the government is trying to get a conviction without facts. But wouldn't it be incumbent upon you, your predecessors representing your client, to bring this to the attention of the district court? Wouldn't it only be fair that you say, something's missing here, rather than saying, gosh, judge, everything's great. We have no problem with this. There is, in fact, a factual basis to support the conviction. Because isn't that what happened at the district court level? For purposes of this answer, I will assume that trial counsel should be standing up and saying, even more eloquently than I just did, the problem with... But he or she did not. That's right. But under even plain error review, one can begin thinking, why did the government charge this case as a conspiracy? If one looks at the PSI, I think it's at paragraph 54, the PSI recognizes that the government has seized virtually no drugs in this case. So its drug quantity attribution is based probably just on e-mail exchanges. It cannot prove the completion of the transaction. So if the case goes back because there was insufficient factual basis for a conspiracy, Mr. Decker could have a significantly reduced sentence. Why do I bring that up in answer to your question? Because on plain error review, that's... Did Mr. Decker object to the pre-sentence report? No. Did he object to the quantities that were set out in the pre-sentence report? No. In fact, the dark web is, as I understand it, designed to allow for this kind of information to be hidden, where different people use software, is it Tor or whatever, to hide their identity, to hide the transactions and what they're really about, so that government and other people cannot identify not only who is involved but what is going on, and then the payment of Bitcoin goes back through the same process where it's clearly washed just by the participants themselves. Am I missing something? No, Judge. That's an excellent summary of the PSI in this. If your client had objected to the findings, objected to the fact that there was a factual basis, wouldn't the government be free to put on witnesses then to go perhaps to go through all this? It occurred to me as I answered your question that a lot of what you were summarizing was in the PSI and not in the factual property. You brought up the PSI a few moments ago like we should be considering it. Right, but counsel can't be expected at the plea colloquy to object to facts that are only raised. What's in the PSI oftentimes is just a recitation of what's in the discovery. Is that not correct? We don't know that. For the most part. That's not in the record here. But we have no way of knowing it because your client basically invited the district judge to do something that you now claim is an error, to accept the basis, to convict him, and then to sentence him. He made a bargain that now he doesn't want to participate in. Is that correct? I do not agree with the word invited because that's a loaded term. I believe that district judges have an independent duty under Rule 11 to decide whether or not there's a factual basis. And, yes, it's extremely helpful if defense counsel stands up and says there's no factual basis here. Nevertheless, the judge has an ongoing duty. I mean, this is serious business, adjudicating someone guilty and sentencing them to jail. It's very serious. So on that one, Judge, I think we have to moderate our – I do not see a defendant pleading guilty as inviting a judge to make a factual basis determination. Don't we actually have a process which is available to your client to challenge whether or not his attorney gave him sufficient representation that otherwise he wouldn't have pled guilty but for what the attorney did? Don't we have a process already available for that? There are 2255 proceedings that would be available. And what you're really, in effect, asking us to do is to go ahead and deal with that now based on some arguments that, frankly, we don't have the benefit of the counsel representing the defendant's testimony or evidence about what actually occurred that we would have in a 2255. Judge, plain error. As I'm sure you're well aware, when defense counsel doesn't object, this court applies plain error. And so the question is, have we demonstrated in our briefs that there was error, that it was error under well-settled law, which that's where I was starting today, that it affected the substantial rights of the defendant? I understand plain error. Thank you. I just was trying to explain in this particular setting, Judge. One final question before you sit. You said the government couldn't prove any sales, but I'm not sure that's correct. They probably couldn't prove any sales for purposes of the conspiracy conviction, but the indictment alleges sales purportedly made by Mr. Decker to agents. That's correct. That's exactly right. You could certainly have, the government certainly has independent proof of disparate sales on different days of certain narcotics. Yes, but the point I was trying to make was that when it came to sentencing, Mr. Decker was sentenced based on a chart that's in the PSI of a considerable greater quantity. No, I get that point. I understand that point. All right. You've saved your time for rebuttal. Thank you very much. Ms. Hoffman. Excuse me, Your Honors. I have a terrible cough, and I will try not to interfere too much. Andrea Hoffman on behalf of the United States, Your Honors. I would like to start with the court's question about the standard review. I think it's well settled now from my co-counsel's or my opposing counsel's discussion that the standard review would be plain error. However, this court could, in fact, start one step farther back. This defendant had four different distinct substantial opportunities to object to the factual sufficiency of the factual proffer in this case. At the time that his plea colloquy occurred, the court went through a review of the fact that it had found the Rule 11 facts. Nobody went over the proffer. They just said there's a proffer in this case. Everybody agrees to the proffer, and they moved on, which is permissible. But nobody really discussed the proffer at the change of plea hearing. That is correct, Your Honor. But all parties did agree that the factual proffer, as is written, was correct. And that factual proffer is sufficient to support the basis of this. How in the world is that? I understand your arguments about plain error and Mr. Decker not being able to succeed on appeal. But there is nothing in this proffer. First of all, it doesn't identify a single person, known or unknown, that Mr. Decker conspired with. Nothing. It says that the dark web is used by people to conspire. But that's not Mr. Decker. It doesn't say on between January of 2015 and December of 2016, Mr. Decker conspired with unknown persons. They're unknown to us because they're working on the dark web to do X, Y, and Z. That language is completely missing from the proffer. That's not for purposes of the result in the case. But in my personal opinion, I speak for myself and not for my two colleagues. That proffer is insufficient on both charges. You could have charged substantive offenses and you could have easily proved those up and then tried to prove larger drug amounts at sentencing. But you, I don't mean you personally, the government charged two conspiracy charges. And so you've got to prove that he agreed with at least one other person to do each of the charged offenses, the drug trafficking and the money laundering. Tell me where in the proffer I can find that for either offense. It comes together in a set of stages, so let me address all the stages. The first one is the proffer does establish that this defendant, Mr. Decker, was a vendor on the dark web. Agreed. So then we have that the factual proffer states plainly in paragraph one that the dark web has vendors, which would be Mr. Decker, and administrators working together, conspiring together, to distribute illegal drugs and to commit a complex series of Bitcoin transactions, which would be the transactions that Judge Kugler was referencing a moment ago where the members, the confederates as opposing counsel called them, were washing their own, the funds for all of these transactions. This complex series of Bitcoin transactions, for example, Your Honor, is a shorthand description of the numerous paragraphs in the PSI of the tumbling that was used to launder the monies in the course of this conspiracy as well as many other conspiracies that are operating on the dark web. And the tumbling, to use the more complex description of it, is the combining of multiple funds from multiple transactions because they're digital bits, not actual monies, blending them together, dispersing them, blending them together, dispersing them. It's an ongoing series of activities before the monies, as the monies enter the system for the purchase of the narcotics, to the payments to the administrators who are running the operation and then to the trafficker who's going to ship the narcotics. So there's a washing and a blending and a, excuse me, a coming together and a part of these transactions. He's conspiring with the same people for both conspiracy offenses? Yes. How do we know that? Because it's the same people who are doing the same kind of role. That's the blending easily described with respect to the money laundering. With respect to the drug trafficking, he, this, the point of the dark web is to create an anonymous, untraceable system. And it's the administrators who create it, built, maintain, operate, and are paid for that system of communications and transfers of both information and monies. So anybody on the dark web, anybody who sells on the dark web, as a matter of law, engages in a conspiracy? I don't think you need to go there, Your Honor. No, but that's the case, right? Because they're using the system you just described and they necessarily are dealing with these administrators. So not only are you engaged in the substantive offense, but you are also necessarily engaged in a conspiracy by using the system that these administrators further. In this case, yes, and particularly so because these administrators set up websites that had categorizations of the illegal conduct. So they had a knowing activity. They, to use contract terms, they made an offer. Here, I'm going to devise an easily usable illegal operation. Come play on my platform. And Decker did, to the tune of nearly 11,000 transactions and almost 20,000 pills in the course of the dates of the conspiracy. So the categorizations, the mechanism by which these administrators set up this web, demonstrated their knowledge and intent that persons like Decker would join them in using their platform to deal in drugs. What do you mean by categorizations? On the dark web system, there are categories for drugs, weapons, malware, illegal operations. One of my colleagues gave me an analogy as I was prepping for this that I think is actually quite apt. Grand Cayman banks do do legal work, do a substantial amount of moving of money and concealing it from people's investigative tasks. That does not make the operators of the Grand Cayman Bank necessarily a conspiracy in some operation. But if the operators of that bank set out lines outside the front of their bank that said legal transactions here, money laundering here, drug trafficking here, identity theft over there, that would make them knowing participants in the movement of the kinds of monies because they're aware of the character and source of those monies. By creating these categories and allowing the open sale of named, controlled, Schedule II substances on their website, these administrators are demonstrating their ongoing intent, an intent that Decker accepted and shared with them by using their platform. Here's why I have a concern, at least at the initial level. The factual proffer in this case spanned a long time, a relatively long time. As a matter of fact, it indicates that he conducted thousands of transactions during this period of time. Was he conspiring with the same dark web administrator? Do these administrators change? Are they fungible? Is it administrator one when he's doing hydrocodone? Is it administrator number two when he's doing oxycodone? Is it administrator number three when he's laundering funds? Do all three administrators agree to the same unlawful plan? That's the problem in this case because none of that is identified, at least at the first level. I'm not talking about the result of the case because I think plain error standard applies. But those sorts of things matter. If you had one person in charge of this dark web, then okay, I can see your argument. But as you've described it as such a big thing, it's not run by one person. And if they're compartmentalizing, they're probably a lot of people compartmentalizing. And I'm sure that these people don't have 10-year contracts on the dark web. Oh, I will serve as your administrator for 10 years. I got a guaranteed salary at this commission rate and whatever, whatever. And if you're doing drugs one day, you might be doing malware the next day. And so when he sells in October, he might be dealing with me. And when he sells in December, he might be dealing with Judge Pryor. And when he sells in January, he might be dealing with Judge Kugler. And so unless that agreement is the same for all three of us with Mr. Decker, there's a problem. But it would be the same, Your Honor, because when you're selling on day one. Why? How do I? It could be the same. But how do you know that? Again, forget about the result in the case. At the front end, isn't it your obligation to put enough stuff in a factual proffer to not have someone ask these sorts of questions? Yes. Yes. Right? The answer to that question, absolutely, Your Honor. Again, I'm not going to say any more, but in my opinion, this factual proffer was deficient in a number of ways because of the way the case was charged. You could have charged. The government could have charged. He's made these three sales. You don't need a conspirator. All you need is him selling, and you got these three sales, and then you could have tried to show a drug amount at sentencing through reasonable foreseeability and all sorts of other concepts. Same thing with the money laundering for these sales. But that's not the way the case was charged. So I've said my piece. Without question, Your Honor, I think it could have been charged that way, and we wouldn't be here had it been charged that way. I don't want to belabor the point either, but I would like to answer it just briefly for one second, and then I'll move on to any other issues other judges have. Why I think your factual concern about three different persons being administrators is a red herring for you, Your Honor, is that at all points in time, the dark webs that this defendant is operating through is the Grand Cayman example. It is a web created specifically to create anonymity, specific categories for illegal conduct, which matters in this case only as to the drug trafficking because I don't care for the purposes of this plea, and nor does this court need to, whether there's also malware or firearms or whatever going on. This web was created with categories for illegal drug trafficking. There is open pharmaceutical-sailed drug transactions advertised. We know that through the undercover transactions. And whether you're running the web today, Your Honor—I'm sorry, let me not say you, Your Honor. No, I use myself. Whether Person A is running the website today and their third cousin is running it tomorrow and a stranger is running it the next day, they're all—someone owns and controls that web. Someone's getting the profits. Someone's paying for it. Remember, it's a computer system ultimately doing a lot of the scut work, and that has to be paid for, maintained, electrical systems monitored. So these people are working for an entity that is deliberate, or they are the entity, that is deliberately creating a platform to sell illegal drugs. That means they have the intent. If the commission structure changes over time, does that mean that the conspiracy changes over time? No, it means the payment scale, the percentage of the cut of the proceeds change. That doesn't change the character of the underlying illegality. So if you—again, going back to an earlier question, I said I was going to shut up and I haven't. I'm sorry. Everybody who engages in this sort of a transaction on the dark web is, as a matter of law, engaged in a conspiracy of at least one sort or another. Everyone who engages in this—if what you mean by this kind of transaction is really— An unlawful drug transaction through the dark web. That is openly advertised and set up by the web people to be that. It can only be that through the dark web. That's the way you've charged the case. What I'm saying is so long as all of those factors are concerned, anybody who engages as the administrators did, who steps in the role of the administrators as they did in this case, would be a conspirator with Mr. Decker if it facilitated his final distribution of those drugs. You think all those people are fungible, necessarily fungible? I think that anybody who maintains the system that sole purpose is the illegality of drugs in this case— it may have other purposes in other places— then they're all sharing the intent of the original person who created it or a subsequent person who comes behind them. And that's no different than—I mean, all of the drugs grown in Colombia aren't grown by the same person. It's fungible people who work the field, the transportation chain. There's different people who select the drugs from the jungle to the water. There's different people who move it from the water on. That doesn't make every person who did that not a member of that conspiracy. Ms. Hoffman, I'd like you to address the money laundering conspiracy issue before you sit down, and specifically about the timing. We say that money laundering has to occur after a completed offense, for example, in United States v. Nolan. But here, as I understand it, the tumbling occurs before the proceeds come out to Mr. Decker on the other end. Is that right? It happens in multiple stages. The tumbling happens when the buyer puts the money into the system. The tumbling happens in the middle when the administrator's moving it around to get his cut. And the tumbling happens in moving proceeds towards Mr. Decker, and then there's financial transactions to move the money out of being Bitcoin into being financial funds. And so the pattern of that entire span creates the conspiracy of money laundering. But it gets turned into currency in the end. That's when the crime is completed, right? That's when the money laundering is completed. Yes, Your Honor. Well, that's when the transaction is completed as well. So the proceeds of the transaction come out after the money laundering occurs. No, the crime would be completed when the Bitcoin makes it to Mr. Decker's account. When the funds are removed and turned back into actual usable currency would be the next stage of the money laundering, Your Honor. So does the money laundering occur at the same time as the transaction itself, the transaction? I can't speak to whether. I can't say for certainty for the court whether Mr. Decker ships the transaction, the drugs at hand, at the point that the Bitcoin hit his account or when he turned it into currency. There is no establishment of the timing of that. But what I can tell you is that Mr. Decker agreed that he did this all the way through, that it got turned into currency. So this is not a situation where you have proceeds from a legal activity, which is then laundered in a subsequent transaction. Would you agree with that? I'm sorry. Could you say that again, Your Honor? I didn't hear it. So this is not a situation where you have unlawful activity, there are proceeds from that, and then those proceeds in a subsequent transaction are laundered. That's not this case, right? I'm not sure that I fully agree with you. I think there are more complex ways that it could happen. But the conversion of the money from the Bitcoin transactions into currency, I believe, is a – That's laundering? Is a – because – If you change currency from euros to dollars, that's laundering? Only in this circumstance, Your Honor, do I think it's a stage of it because of the tumbling and the concealment and the inability to trace that funds backward. And then to be able to use them, he has to convert them at some point into currency. Euros could be used in any fashion. The Bitcoin can't be used at your grocery store. Where do we get all this information about tumbling from the record? In the factual proffer, it talks about – it says specifically, and I quote, through a series – the laundering proceeds occurred through a series of complex Bitcoin transactions designed to conceal the nature, source, and control of the funds. So the factual proffer has a – That's it? The factual proffer has a shorthand description of the tumbling that is described in greater detail in the PSI, Your Honor. The PSI comes too late for a plea. Except that – I do understand that, Your Honor. But what is described in greater depth is referenced here in the factual proffer, and Mr. Decker, as Judge Kugler acknowledged, agreed that that was sufficient to describe the nature of what he was doing. And in that category – That may get you past the finish line in this case, but it doesn't eliminate at least my personal concern that this proffer had problems left and right. Everything you're describing here could have been explained in this proffer. None of it was. There could be a different proffer. I don't disagree. Counsel, question. You acknowledged that this would be a whole lot easier for everybody to deal with if your attorneys had done a better job of developing the factual proffer to begin with. Yes, sir. Second, are you saying that in this particular instance, I guess it's more akin to somebody selling drugs that receives, say, diamonds, and you can prove the reason why they receive diamonds as the proceeds for the sale of drugs is because for the most part they're untraceable. You've got certain categories or descriptors, but they're not going to be serial numbers on the diamonds. And then the diamonds, the person puts them into a big bucket of diamonds they already have and eventually convert those diamonds to cash that they then can spend on their groceries. That's what you're saying occurred basically? Yes, sir. Okay. If the court's – I see I'm well over my time. If the court has no other questions, I would ask that you affirm this conviction on all of the grounds that we didn't quite get to, but the plain error standard and et cetera and the invited error questions. And I thank you, Your Honor. All right. Thank you very much, Ms. Hoffman. Mr. Cohn. I'm going to focus on what Judge Jordan referred to as the result. And I'm going to pick up on the last question that Judge Kugler asked, which is, before doing that, if this court agrees that this factual proffer simply did not establish conspiracies, and if, as the discussion went, we agree that perhaps under substantive crimes Mr. Decker could be prosecuted, the question then becomes is the difference between those two prosecutions significant enough in terms of the plain error substantial rights analysis for this court to say, we're sending this case back. And if I may, Judge Kugler, just pick up on your last point, which is let's say diamonds to currency is money laundering, which I understood you to be asking, in effect. If so. I was asking if that's what they were kind of meaning. Right. And I think the answer was yes. That's sort of what we're saying. But in that diamonds to currency transaction, only Mr. Decker, who's being paid in diamonds, not the Web, is involved in converting his diamonds to currency. So that might be a substantive offense. And as Judge Jordan hinted, there could be some good arguments that it isn't. Euros to dollars, is that money laundering? Diamonds to currency, is that money laundering? But the point is that would be a substantive offense, completely different from what we've been hearing from the government today. So in terms of the result for money laundering, we are looking at a brand new slate and a brand new legal issue and a brand new set of facts. And the same, I would say, is also true for the drug count. I acknowledge, Judge Jordan, as you pointed out, that the indictment identified specific transactions with law enforcement agents. But those transactions are a small fraction of what my client has been held accountable for and has been sentenced for. If this court says, yes, prosecute this as it should be, as a substantive drug trafficking offense, then my client has an opportunity to put on a defense and to say. . . Well, hang on a second. Your client had an opportunity to put on a defense. Your client chose not to. So I understand what you're saying. But let me make sure I go back to the diamond that you brought up. Your problem with the scenario would be that there was not a co-conspirator involved in converting the diamonds to cash. That's right. Certainly not one that's named in this case. But let's suppose, as oftentimes there is in the Bitcoin market, there is someone who is involved in the conversion of the Bitcoins to cash, and someone that is involved in purchasing the diamonds from a known drug dealer for a small amount of money relative to the value if they were selling them on the wholesale diamond market in New York. Knowing that that was the proceeds of criminal activity and that's why they were buying them so cheap, they were running the risk of being prosecuted themselves, and they were giving cash to the drug dealer. Wouldn't they be a co-conspirator then in money laundering? First, let's acknowledge that's a different conspiracy. I agree with you. So now the question is, I don't know. I don't know whether the person doing the conversion did or did not, and the government probably does not. But I strongly suspect, if I may finish, they did not know. There's no reason for them to know. But my point is, isn't that something that should have been addressed in the district court? So the district court would have had the opportunity to make those kind of decisions. And if the district court felt like there was not a sufficient basis, in fact, couldn't the district court then say, no, there's not? Bless you. And, you know, where's the beef? I'd go back to how plain the error is. I think, honestly, from the discussion today in this court, it's pretty plain. One looks at the factual proffer. I don't have the exact words that Judge Jordan used to describe it, but it's not a close call. There's just no conspirator identified. And you and I, as I understand it, have just agreed that if there were a conspirator for that final diamonds thing, it's not even in the factual proffer at all. That's clear. So these are the ingredients of a clear error. And given the consequence on my client, I would ask this court to remand. Would your client, and I know you're over your time, but would your client, are you telling us your client would have not taken the plea under those scenarios if, for instance, somebody pointed out to your client, well, look, you know, they haven't put on a factual basis about who this other co-conspirator is or the identity of the co-conspirators on the dark web. Are you saying there's evidence or any kind of anything that would demonstrate your client would not have pled guilty? Two points. First, the Tenth Circuit case that's in our brief says that question doesn't get asked. But I will answer it. It's not the right way to approach this particular issue. If my client had been told, turns out for money laundering, just pursuing our conversation, the only basis for money laundering would be you're converting diamonds to cash, Bitcoins to currency, and there's nothing in these facts that suggests that there's a co-conspirator who was involved in that. And there's serious doubt as to whether that's even money laundering. Yes, my client would not have pled guilty. All right, Mr. Cohen, thank you very much. Ms. Hoffman, thank you.